**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| WARNER CHILCOTT LIMITED et. al., | ) | |
| | ) | |
| Petitioner, | ) | Misc. Action No. 4:17-mc-00250 |
| | ) | |
| vs. | ) | *In re Asacol Antitrust Litigation* |
| | ) | Civ. No. 1:15-cv-12730 (DJC) |
| | ) | Pending in the District of |
| EXPRESS SCRIPTS, INC. et. al., | ) | Massachusetts (hereinafter |
| | ) | "Underlying Lawsuit") |
| Respondent. | ) | |

## EXPRESS SCRIPTS' OPPOSITION TO ALLERGAN'S MOTION TO COMPEL

Defendants Express Scripts, Inc. and Express Scripts Holding Company (collectively, "Express Scripts") submit their opposition to the Motion of Defendants Warner Chilcott Limited; Warner Chilcott Company, LLC; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; Allergan plc; Allergan, Inc.; Allergan USA, Inc.; and Allergan Sales, LLC (collectively, "Allergan") to Compel Express Scripts to Produce Documents and Deposition Testimony ("Motion").

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Express Scripts is not a party to the Underlying Lawsuit. .....................................2

    B.    Express Scripts has worked with Allergan in good faith to comply with its subpoenas, and has already produced documents. ...................................................3

ARGUMENT ...................................................................................................................... 4

    I.    The Federal Rules Limit Discovery Directed to Non-Parties and Discovery Seeking Confidential Information. .............................................................................4

    II.    Allergan's Motion Should be Denied Because it Has Not Shown the Confidential Information Sought is Relevant or Necessary, and Any Alleged Relevance is Outweighed by the Undue Burden and Harm to Express Scripts. ........................................................................................................7

        A.    The documents Allergan seeks are confidential trade secrets, and their disclosure would cause significant competitive harm to Express Scripts. ....................................................................................... 7

        B.    Allergan has not shown that Express Scripts' confidential information is relevant and necessary to its defense of the Underlying Lawsuit. ................................................................................ 9

            1.    As the Court in the Underlying Lawsuit has already found, the documents Allergan seeks have no more than "limited relevance" and will not help Allergan prove market definition. ................................................................................ 10

            2.    Allergan has not shown a substantial need for the discovery, particularly in light of the evidence Allergan has already obtained. ........................................................................ 15

        C.    The undue burden and substantial harm to Express Scripts by the disclosure of its confidential trade secrets would outweigh any purported relevance or need for this discovery. ....................................... 17

    III.    Allergan has Not Shown Any Need to Depose an Express Scripts' Representative. .......................................................................................................22

    IV.    The Court Should Require Allergan to Pay Express Scripts' Reasonable Attorneys' Fees and Costs in Responding to the Subpoena. ................................22

CONCLUSION................................................................................................................... 25

i

# **TABLE OF AUTHORITIES**

**Page**

## Cases

*Accord Roberts v. Shawnee Mission Ford, Inc.*,
  352 F.3d 358 (8th Cir. 2003) ................................................................. 5

*ACI Worldwide Corp. v. Mastercard Technologies, LLC*,
  2016 WL 3647850 (D. Neb. July 1, 2016) ................................. 16, 17, 18

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
  2013 WL 5276124 (N.D. Iowa Sept. 17, 2013) ............................ 12, 23

*American Broadcasting Cos. v. Aereo, Inc.*,
  2013 WL 6086867 (N.D. Iowa Nov. 19, 2013) ............................. 18, 23

*Arista Records, LLC v. Lime Group, LLC*,
  2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) ...................................... 21

*Cantrell v. US Bioservices Corp.*,
  2009 WL 1066011 (W.D. Mo. April 21, 2009) ................................... 16

*Chevron Corp. v. Salazar*,
  2011 WL 7112979 (D. Or. Nov. 30, 2011) ...................................... 24

*Cusamano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) ...................................................... 5

*Echostar Comm'ns Corp. v. News Corp. Ltd.*,
  180 F.R.D. 391 (D. Col. 1998) ............................................... 18, 20

*Enterprise Holdings, Inc. v. McKinnon*,
  2014 WL 5421224 (E.D. Mo. Oct. 23, 2014) ..................................... 5

*Gray v. Cottrell*,
  2006 WL 1663242 (E.D. Mo. June 12, 2006) .................................... 6

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1992) ...................................................... 4

*Huntair, Inc. v. Climatecraft, Inc.*,
  254 F.R.D. 677 (N.D. Okla. 2008) ............................................... 24

*In re eBay Seller Antitrust Litigation*,
  2009 WL 5205961 (W.D. Wash. Dec. 23, 2009) ........................ 16, 17, 19

*In re Independent Serv. Organizations Antitrust Litig.*,
  162 F.R.D. 355 (D. Kan. 1995) ................................................. 19

*In re Remington Arms Co.*,
  952 F.2d 1029 (8th Cir. 1991) ............................................. 6, 9, 18

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
    206 F.R.D. 525 (D. Del. 2002) ........................................................................ 20

*Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*,
    197 F.3d 922, 925 (8th Cir. 1999) ................................................................... 5

*Mylan Pharmaceuticals Inc. v. Warner Chilcott PLC*,
    838 F.3d 421 (3rd Cir.2016)...................................................................... 13, 14

*The Hunte Corp. v. Martinelli*,
    2010 WL 4813849 (W.D. Mo. Nov. 19, 2010), *aff'd*, 2011 WL 6822123 (8th Cir.
    Dec. 29, 2011) .................................................................................................. 24

*U.S. Horticultural Supply v. Scotts Co.*,
    367 Fed. Appx. 305 (3d Cir. 2010) .................................................................. 13

*Wacker v. Gehl Co.*,
    157 F.R.D. 58 (W.D. Mo. 1994) ........................................................................ 4

## Rules and Regulations

Fed. R. Civ. P. 26(b)(1).............................................................................................. 5

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................... 5

Fed. R. Civ. P. 45(c)(1)............................................................................................ 23

Fed. R. Civ. P. 45(d)(1)............................................................................... 5, 22, 23

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................................. 5

Fed. R. Civ. P. 45(d)(B)(i) ........................................................................................ 6

Fed. R. Ev. 902(11)................................................................................................. 22

## Additional Authorities

*Letter from the Federal Trade Commission to Greg Aghazarian, Assembly Member, Cal.
    Gen. Assembly 6-7 (Sept. 7 2004)*, available at http://www.ftc.gov/be/V040027.pdf.......... 9, 15

## **INTRODUCTION**

This is not an ordinary motion to compel.  Allergan seeks extraordinary relief, asking this Court to compel Express Scripts to produce its highly confidential and sensitive commercial information for use in a lawsuit to which Express Scripts is not a party.  Allergan, a drug manufacturer, wants the details of Express Scripts' rebate agreements, negotiations, and analytics between Express Scripts and other drug manufacturers who compete with Allergan.  These documents are closely protected trade secrets, and there can be no doubt that Express Scripts could suffer significant competitive harm if this information is disclosed.

Allergan provides no basis for the relief it seeks – much less a substantial need that outweighs the burden, risk and harm to Express Scripts.   Nor does Allergan bother to disclose the history of its failed prior attempts to obtain this type of information in the Underlying Lawsuit.  For example, Allergan fails to inform this Court that it has sought the same type of information in the Underlying Lawsuit, and that that Court has denied that discovery, finding that:

- The types of documents Allergan seeks are of no more than "limited relevance" to prove market definition;

- Allergan has not established any need for the documents it seeks, whether through expert testimony or otherwise;

- Allergan already has the data necessary to prove market definition, including its own data and publicly available industry data.

*See* Discovery Order in Underlying Lawsuit, pending in the U.S. District Court for the District of Massachusetts, Cause No. 1:15-cv-12730, entered Jan. 3, 2017 [Doc. 257] (attached hereto as Ex. 1), affirmed Feb. 25, 2017 [Doc. 292].

Further, hours after Allergan's counsel was told by the Court in the Underlying Lawsuit that Allergan's pending motion to compel its competitor drug manufacturer to produce similar

1

information failed to show any justifiable need, Allergan filed a motion for an expedited hearing in this Court (Doc. 3), in an unabashed attempt to get a ruling from this Court before the Court in the Underlying Lawsuit issues its ruling.  Allergan's motion for expedited consideration, like the motion to compel, fails to disclose these facts.

Express Scripts has already made a substantial production in this case; one that is consistent with the compromise it reached with Allergan's counsel months ago in good faith and in a sincere attempt to avoid this type of discovery litigation.  Express Scripts upheld its end of that bargain, but Allergan decided to throw that compromise aside and insist on the production of highly-sensitive information, the production of which will cause Express Scripts competitive harm.    Rule 45 requires much more.  Allergan is not entitled to discover Express Scripts' highly-confidential trade secrets without proof that the specific documents it seeks are relevant, necessary to prove its case, and that it has a substantial need for the information that outweighs the burden and harm to Express Scripts.  Allergan does not even pretend to make this showing.

This Court should not countenance Allergan's gamesmanship, its lack of candor with this Court, and its disregard for its burden of proof when seeking highly confidential trade secrets from a non-party. Allergan's Motion to Compel should be denied, and Express Scripts should be awarded its fees and costs in responding to this motion.

## **BACKGROUND**

### A.    **Express Scripts is not a party to the Underlying Lawsuit**.

Allergan is a defendant in an antitrust lawsuit pending in the District Court for the District of Massachusetts, *In re Asacol Antitrust Litigation,* Cause No. 1:15-cv-12730 (the "Underlying Lawsuit"). The Plaintiffs in the Underlying Lawsuit are purchasers of pharmaceutical products manufactured by Allergan to treat ulcerative colitis (referred to as the

"Asacol products").   Plaintiffs allege that Allergan and the other Defendants engaged in a scheme to maintain a monopoly by "product hopping," *i.e.* making minor improvements to a product simply to prevent the entry of generic versions of the product.

Express Scripts is a pharmacy benefit manager ("PBM") that is not a party to the underlying litigation.   The Underlying Lawsuit does not relate in any way to Express Scripts or PBM services.   Allergan has issued subpoenas to Express Scripts for the production of documents and deposition testimony in the Underlying Lawsuit.

**B.**   **Express Scripts has worked with Allergan in good faith to comply with its subpoenas, and has already produced documents**.

While the subpoenas served by Allergan were incredibly broad and burdensome, Express Scripts made a good faith effort to work with Allergan's counsel to reach a compromise and respond to the subpoenas.   *See* Declaration of Urmila Paranjpe Baumann ("Baumann Decl."), attached hereto as Ex. 2, at ¶¶ 5-6.   As part of this compromise, and in good faith, Express Scripts produced nearly one-thousand pages of documents, including Express Scripts' formularies, step therapy policy, and meeting minutes from committees involved in the formulary process.   *See* Baumann Decl., at ¶¶ 7-8.

However, after Express Scripts produced these documents in reliance on the compromise reached with counsel, counsel for Allergan demanded that Express Scripts additionally produce two more categories of documents:

(1)   Express Scripts' contract negotiations with other [drug] manufacturers, including bid solicitations, negotiations, and Express Scripts' "consideration of and decisions on" the bids (the "bid documents"), and

(2)   Express Scripts' rebate agreements with these competing manufacturers ("rebate agreements").

*See* Baumann Decl., ¶ 9.

Allergan's counsel was unable to provide any precedent or any basis supporting why this additional production was suddenly necessary, or why the information needed could not be obtained from the party litigants, the documents Express Scripts already produced or from other entities. *Id.*, ¶ 10.

Express Scripts has objected to producing these documents, as its confidential pricing information, contract negotiations, formulary considerations, and rebate agreements are competitively sensitive, proprietary, and highly confidential, and the undue risk, burden and expense to Express Scripts of producing these documents would far outweigh any purported relevance or claimed need for these documents.

## ARGUMENT

### I.   The Federal Rules Limit Discovery Directed to Non-Parties and Discovery Seeking Confidential Information.

The Federal Rules of Civil Procedure include specific provisions that are intended to limit the scope of overly broad and unduly burdensome discovery – particularly where, as here, discovery (a) is directed to non-parties like Express Scripts, and/or (b) seeks production of confidential or proprietary commercial information or trade secrets.

"Although the standard of relevance in the context of discovery is admittedly broader than in the context of admissibility, 'this often intoned legal tenant should not be misapplied so as to allow fishing expeditions in discovery.'" *Wacker v. Gehl Co.*, 157 F.R.D. 58 (W.D. Mo. 1994) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). The court should preclude discovery that is overbroad, unduly burdensome, or disproportionate to a party's need:

> [D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action, and "[e]ven if relevant, discovery is not where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."

*Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) (citations omitted); *see also* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case").

The Rules impose additional safeguards when discovery is sought from a non-party. Rule 45(d) requires every party and attorney issuing a subpoena to a non-party to "take reasonable steps to avoid imposing undue burden or expense," and the court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iii) *See also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

"Courts have wide latitude in deciding motions to quash civil non-party subpoenas, and should give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense." *Enterprise Holdings, Inc. v. McKinnon*, 2014 WL 5421224, at *1 (E.D. Mo. Oct. 23, 2014).  In *Miscellaneous Docket Matter*, the Eighth Circuit affirmed the district court's order quashing a burdensome subpoena directed to a non-party, holding that "***concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs***."   197 F.3d at 927 (quoting *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (emphasis added).  This is because non-parties "are strangers to the . . . litigation" and "they have no dog in that fight. Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation.  Non-parties have a different set of expectations." *Cusamano,* 162 F.3d at 717.  *Accord Roberts v. Shawnee Mission Ford, Inc*., 352 F.3d 358, 361 (8th Cir. 2003) (holding that district court properly quashed subpoenas directed to non-parties

because subpoenas were a "fishing expedition"); *Gray v. Cottrell*, 2006 WL 1663242, at *1 (E.D. Mo. June 12, 2006) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.") (quoting *Cusumano*, 162 F.3d at 717).

Further, the Eighth Circuit has imposed additional heightened protections when a party seeks discovery of confidential commercial information or trade secrets. *See* Fed. R. Civ. P. 45 (d)(B)(i) (court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information"). Once the subpoenaed party shows that the information is a trade secret or other confidential or commercial information and that "its disclosure would be harmful to the party's interest," the "***burden then shifts to the party seeking discovery to show** that the information is **relevant** to the subject matter of the lawsuit **and** is **necessary** to prepare the case for trial*." *In re Remington Arms Co.*, 952 F.2d 1029, 1032-33 (8th Cir. 1991) (emphasis added). After the party seeking discovery has established both relevance and need for the information, the Court must then conduct a balancing test:

> If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.
>
> ***
> . . . **Discovery should be denied unless [party seeking discovery] establishes the relevance of the trade secrets to his case, demonstrates a true need for the information, and shows that the potential harm to [subpoenaed party] is outweighed by [party's] need for discovery.**

*Remington Arms*, 952 F.2d at 1032-33 (emphasis added).

Allergan ignores this framework and its burden to show the relevance and need of Express Scripts' confidential information. It also ignores the balancing test that this Court must

perform if Allergan could somehow demonstrate both of these elements.  When the proper considerations are weighed, Allergan's Motion must be denied.

## II.     **Allergan's Motion Should be Denied Because it Has Not Shown the Confidential Information Sought is Relevant or Necessary, and Any Alleged Relevance is Outweighed by the Undue Burden and Harm to Express Scripts**.

Allergan's Motion should be denied, as Allergan has not shown that the specific documents it seeks are relevant, it has not even argued the documents are necessary to its case, and Allergan has no substantial need for this discovery that outweighs the undue burden it would place on Express Scripts, a non-party, to produce its competitive commercial information.

### A.     **The documents Allergan seeks are confidential trade secrets, and their disclosure would cause significant competitive harm to Express Scripts**.

Allergan does not dispute that the bid documents and rebate agreements it seeks from Express Scripts are confidential and sensitive commercial information and trade secrets, and it makes no attempt to address the harm Express Scripts would incur if forced to turn over its trade secrets. That risk is very real.

Express Scripts offers a variety of services and programs to various entities such as health plans, health maintenance organizations, insurance companies, and self-funded employer groups (collectively "clients"). *See* Exhibit 3, Declaration of Todd Jeffrey ("Jeffrey Decl."), ¶ 7.  The PBM industry is highly competitive, and there are many PBMs from which clients can choose to contract for PBM services.  *Id.*, ¶ 8.  Express Scripts' mission is to make prescription drugs safer and more affordable.  *Id.*, ¶ 9.

Express Scripts' success in competing for business depends on its ability to develop clinically-sound solutions for clients and their members to access prescription drugs as well as to provide economic value for its clients in a landscape where prescription drug spend continues to rise.  *Id.*, ¶ 9.  One of the most important—and competitive—functions performed by PBMs is

obtaining retrospective discounts ("rebates") on prescription drugs through skilled negotiation and management of drug manufacturer rebate agreements. *Id.*, ¶ 10. Express Scripts is able to offer lower-cost prescription drug benefits to clients in part because of the rebates it receives from drug manufacturers. *Id.*, ¶¶ 11-12. Express Scripts has devoted substantial resources to the development of its drug formularies, as well as its drug manufacturer rebate contracting process and considers the processes, considerations, analytics, negotiating strategies and other strategic tools to be highly-confidential and closely protected trade secrets. *Id.*, ¶ 13.

Express Scripts' bid solicitations to drug manufacturers, the manufacturers' responses, Express Scripts' strategy (including considerations of and decisions on the bids), and Express Scripts' rebate agreements are highly-confidential and competitive documents and trade secrets. These include processes, as well as commercial and financial terms that Express Scripts diligently protects to maintain as confidential. *Id.*, ¶ 15. Disclosure of these competitively-sensitive documents and information would deprive Express Scripts of valuable assets and trade secrets. *Id.*, ¶ 16. Disclosure of manufacturer rebate agreements may also cause Express Scripts to violate specific confidentiality provisions in the agreements themselves. *Id.*, ¶ 17.

Disclosure of this information to Express Scripts' competitors would harm Express Scripts commercially, because a significant part of Express Scripts' competitive advantage is its ability to provide its clients with superior economic value and cost savings; if Express Scripts' competitors had access to this information they could use it to their advantage in their own negotiations with manufacturers in ways to undercut the agreements negotiated by Express Scripts. *Id.*, ¶ 18.

Further, disclosure of this information to any pharmaceutical manufacturer, such as Allergan, would harm Express Scripts commercially and give Allergan an unfair competitive

advantage against other pharmaceutical manufacturers.  If Allergan had access to its competitors' bids and negotiations with Express Scripts, Allergan could use this information to undercut its competitors.  *Id.*, ¶ 19.  If manufacturers or their experts gained access to this information, they could use it to Express Scripts' competitive disadvantage in contract negotiations, as well as with other PBMs. *Id.*, ¶ 20.[1]

As such, the disclosure of Express Scripts' rebate agreements with drug manufacturers, as well as Express Scripts' consideration or negotiation of those agreements and formulary analytics, could substantially reduce the ability of Express Scripts, as well as other PBMs, to negotiate discounts with drug manufacturers which would, in turn, undercut a critical component of Express Scripts' value-proposition.  Jeffrey Decl.,  ¶ 21.

**B.     Allergan has not shown that Express Scripts' confidential information is relevant and necessary to its defense of the Underlying Lawsuit**.

As set forth above,  Allergan bears the burden to show that the highly-confidential and trade secret information it seeks is both relevant and necessary to prepare its case for trial, and that it has a substantial need for discovery that outweighs the significant harm to Express Scripts. *Remington Arms,* 952 F.2d at 1032.  Allergan has not even come close to making this showing.

Notably, the Court in the Underlying Lawsuit has already held that the types of documents Allergan seeks are only of "limited relevance," are not necessary, and that the information that would best establish market definition is available in Allegan's own documents

---

[1] In fact, the FTC has recognized that requiring PBMs to disclose their manufacturer rebate agreements could lead to "tacit collusion" among drug manufacturers, which would be harmful to competition:  "If pharmaceutical manufacturers learn the exact amount of the rebates offered by their competitors . . . then tacit collusion among manufacturers is more feasible," which "may lead to higher prices for PBM services and pharmaceuticals" incurred by consumers. *See* Letter from the Federal Trade Commission to Greg Aghazarian, Assembly Member, Cal. Gen. Assembly 6-7 (Sept. 7, 2004), *available at* http://www.ftc.gov/be/V040027.pdf ("FTC Letter") , at p. 9.

and in publicly available industry-wide documents.  *See* Order on Defendants' Motion to Compel Market Discovery ("Discovery Order"), entered Jan. 3, 2017 in Underlying Lawsuit [Doc. 257] (attached as Ex. 1), at p. 4, 7.

Allergan fails to mention the Underlying Court's Discovery Order, and fails to offer any evidence in this Court that would justify imposing upon non-party Express Scripts a burden to produce documents that the Underlying Court has already held could not be imposed upon the Plaintiffs to the Lawsuit.

> **1. As the Court in the Underlying Lawsuit has already found, the documents Allergan seeks have no more than "limited relevance" and will not help Allergan prove market definition.**

Allergan's assertion that market definition is a relevant issue in the Underlying Lawsuit misses the point.  The pertinent question, which Allergan fails to answer, is how the specific documents it seeks from Express Scripts are relevant and necessary to prove this issue.  Allergan wholly fails to explain how the bid documents and rebate agreements are relevant to prove market definition, or why these additional documents are necessary for Allergan to prepare its case, in light of the information that Allergan itself possesses and the information that it has already received from Express Scripts, from the Plaintiffs, from other third-parties, and from other publicly available sources.

Allergan fails to inform this Court that the Court in the Underlying Lawsuit *denied* Allergan's motion to compel the *Plaintiffs in the Underlying Lawsuit* to produce the same types of documents that it now seeks from Express Scripts.  *See* Discovery Order, (Ex. 1).  Allergan moved to compel Plaintiffs to produce documents regarding rebates and formulary placement, arguing that these documents were relevant to show market definition.  *See* Allergan's memorandum in support of motion to compel product market discovery, filed in Underlying

10

Lawsuit [Doc. 195] ("Underlying Discovery Motion") (attached as Ex. 4).[2]

Magistrate Dien denied Allergan's motion, holding that the discovery was of no more than "limited relevance" and "will not assist the defendants in proving market share 'in any meaningful way.'" *See* Discovery Order (Ex. 1), at p. 4, 6-7.   Allergan filed Objections to the Discovery Order and, after another round of briefing, Judge Casper overruled Allergan's Objections and affirmed the Order.  *See* Docket Order in Underlying Lawsuit [Doc. 292].

Allergan attempts to circumvent the Discovery Order by subpoenaing Express Scripts to produce the same types of documents that the Court in the Underlying Lawsuit held were not discoverable from the Plaintiffs.  Given the Court's ruling that any purported relevance or need of these documents did not outweigh the burden to the party who brought the Lawsuit, Allergan cannot seriously contend that it has a substantial need for these documents that outweighs the burden to Express Scripts, which is not a party to the Lawsuit.

Notably, Allergan has also sought to obtain the same pricing information and rebate agreements directly from its competing manufacturers, and filed a motion to compel non-party Shire US, Inc. (a manufacturer of certain pharmaceutical products for the treatment of ulcerative colitis) to produce documents and deposition testimony.[3]  *See* motion in Underlying Lawsuit [Doc. 321].  Like Express Scripts, Shire objected to producing its pricing information and rebate agreements as highly confidential and competitively sensitive.  *See* Shire's opposition in Underlying Lawsuit [Doc. 340].  The Court heard Allergan's motion on May 4, 2017.  *See*

---

[2]   By way of example, Allergan specifically requested from the Plaintiffs documents regarding formulary placement (*See* Allergan's Underlying Discovery Motion, at App. A, Requests 39, 52-53, 60; App. B, Requests 33-34, 43-44, 48) and agreements or communications with pharmacy benefit managers (*Id.* at App. A, Requests 21, 29, 38; App. B, Requests 21, 28, 30).

[3]   Based upon conversations between counsel, Express Scripts believes that Allergan has issued subpoenas to other competing manufacturers as well.

docket entry in Underlying Lawsuit [Doc. 348].  At that hearing, the Court specifically stated that rebate agreements between Shire and Express Scripts are "very, very confidential information," and pointedly asked Allergan's counsel:  "[A]re you going to have expert reports that do very specific analysis of certain rebate programs? . . . I mean, how does that, how does that evidence come in? . . . I get back to just what does your expert need?"  *See* Transcript from May 4, 2017 hearing ("Shire Transcript") (attached as Ex. 5), at 47:3 – 48:11.  Allergan's counsel had no response other than, "we are working on it."  *Id.* at 47:8-23.  The Court took the motion under advisement, but offered the following preliminary conclusion:

> I'm still not seeing that, the pressing need for this information, I guess is where we're coming, where I'm coming from. . . . I'm not inclined to order the production at this time without further evidence of specific need of factual information that's available in the market place from an expert telling me that that analysis requires X number, X type of information . . . or something that says to me you need facts as opposed to sort of generally available information that there's a competitor out there.

*See* Shire Transcript, at 50:23-25; 51:10-20.

Notably, on the evening of May 4, 2017 – immediately following the Shire hearing – Allergan filed in this Court a motion for expedited hearing on the instant Motion.  In the face of the Underlying Court's admonition that Allergan has not offered any showing of why it needs discovery, Allergan apparently hopes that it can push its Motion through this Court before the Underlying Court issues its ruling.  This Court should defer to the determination of the Court in the Underlying Lawsuit as to what discovery is relevant and necessary to show market definition.  *See American Broadcasting Companies, Inc. v. Aereo, Inc.*, 2013 WL 5276124, at * 6 (N.D. Iowa Sept. 17, 2013) (court presiding over underlying lawsuit "is in the best position to determine the relevance of the requested documents").

Turning to the specific documents Allergan seeks in this Motion, Allergan has made no attempt to show how Express Scripts' bid documents and rebate agreements with other drug manufacturers are relevant to show market definition.  Allergan asserts that it wants to show that the industry treats ulcerative colitis treatments as "economically interchangeable" and subject to "substitution."  *See* Motion, at p. 2, 7-8.  To that end, Express Scripts has already produced its formularies, as well as the meeting minutes of the committees involved in making these decisions, which are the best evidence of Express Scripts' consideration of and decisions on these issues.  *See* Baumann Decl, ¶¶ 8, 16.

But even if Express Scripts' formularies used by its clients were relevant to market definition, its deliberations and analyses behind these formularies are not.  Allergan has not offered any possible relevance of Express Scripts' bid documents, negotiations and agreements with other manufacturers, or other deliberations behind Express Scripts' formularies.  Given that these internal analyses and evaluations are confidential and not publicly available, they cannot possibly establish industry practice or define the market.  *See U.S. Horticultural Supply v. Scotts Co.*, 367 Fed. Appx. 305, 311 (3d Cir. 2010) (internal documents reflecting defendants' views of the market did "not speak to buyer behavior" and were not legally sufficient support of market definition).  As such, they have no relevance to the market at issue in the antitrust case.

The disconnect in Allergan's reasoning is not cured by the cases it cites in its Motion.  Allergan cites a handful of cases in which the court looked at formularies as evidence of interchangeability, but Allergan does not cite a single case holding that a PBM's manufacturer rebate agreements, negotiations and internal analyses could possibly have any relevance.

Allergan's reliance on *Mylan Pharmaceuticals Inc. v. Warner Chilcott PLC*, 838 F.3d 421 (3rd Cir. 2016) is misplaced and misleading.  In *Mylan*, the Court simply considered the

product's "interchangeability" with other products when defining the market, and it considered evidence that managed care organizations "substitute" other products for Doryx.  838 F.3d at 436.  But this evidence was shown by the formulary documents, and there is nothing in *Mylan* that even hints that the Court can look beyond the formulary at the managed care organizations' internal analyses or manufacturer agreements.  Allergan's suggestion that *Mylan* supports the discovery it seeks from Express Scripts is particularly egregious, given that Allergan[4] issued a subpoena to Express Scripts in the *Mylan* lawsuit for Express Scripts' formulary documents, which Express Scripts produced – and Allergan did not in *Mylan* rely on or receive any bid documents, rebate agreements or other documents it seeks in the instant Motion.  In other words, *Mylan* not only does ***not*** support the requested relief, it shows why it is unnecessary.

Allergan's assertion that Express Scripts' internal documents would show "cross-elasticity of demand" fares no better.   In *Mylan*, the court explained that "cross-elasticity of demand is a measure of substitutability of products ***from the point of view of buyers***."  838 F.3d at 437 (emphasis added).  But while a buyer's demand may be measured by the *cost to the buyer*, buyers' demand cannot be measured by Express Scripts' own internal cost considerations.

The FTC – in a statement opposing a provision that would require PBMs to disclose their rebate agreements – explained that a PBM's cost structure has no relevance to buyer demand:

> In the overwhelming majority of markets, however, consumers have limited or no information about the cost structure of those with whom they do business.  More importantly, in general, consumers do not need such information to make efficient purchasing decisions.  Instead, ***consumers make purchasing decisions based on the price and value of goods and services, without regard to a vendor's costs of production***.

---

[4] The Warner Chilcott defendant in *Mylan* has merged with Allergan, and both entities are defendants to this lawsuit and parties to this Motion.  Warner Chilcott was represented in the *Mylan* lawsuit by White & Case, the same law firm that represents the defendants herein.

*See* FTC Letter, at p. 8 (emphasis added).

In sum, Allergan has not shown that the requested documents are relevant or necessary to prove its claims or defenses in the Underlying Lawsuit.

>   **2.      Allergan has not shown a substantial need for the discovery, particularly in light of the evidence Allergan has already obtained**.

As demonstrated above, Allergan has failed to show any relevance to the documents it seeks.  Allergan's analysis ends there, and so should the Court's.  Allergan does not even address the second prong of the test for discovering trade secrets – whether Allergan has a <u>substantial need</u> for these confidential documents.  Its Motion should be denied for this reason alone.

The Court in the Underlying Lawsuit has repeatedly admonished Allergan that "the appropriate way to handle it" is to come forward with expert testimony or some other evidence showing "you need this information."  *See* Shire Transcript (Ex. 5), at p. 43:21 – 44:2; *see also id.* at 47:3 – 48:11; 51:10-20.  Allergan has ignored these warnings and now comes to this Court with no expert and no explanation of why it needs the documents it seeks from Express Scripts.

It is clear that the reason that Allergan has not attempted to demonstrate a need for Express Scripts' confidential bid negotiations, rebate agreements and analyses is that it has no need for these documents.  As set forth in the Discovery Order, all of the information Allergan needs is publicly available or in Allergan's possession.  *See* Discovery Order, at p. 6 (quoting from Declaration of Plaintiffs' expert, Meredith Rosenthal).

As a drug manufacturer, Allergan has evidence regarding whether its pharmaceutical products are comparable in price, use, and qualities with its competitors. It is undisputed that "market-wide data on manufacturer sales, discounts, rebates and coupon values are maintained by the defendants."  Rosenthal Declaration (attached as Ex. 6), at ¶ 20.  Moreover, a "rich source of aggregate data exists to address market definition," including "the widely used data collected

by IMS Health," which are "easily obtainable" and are "used extensively by industry participants, governmental research, academic research . . . and in litigation" and "are considered the gold standard of data for analysis of pharmaceutical product markets." *Id.*, at ¶ 19.

Further, in addition to the formulary documents produced by Express Scripts, Allergan has obtained formulary information from other PBM's and payors demonstrating how they treat various ulcerative colitis treatments as interchangeable or therapeutic alternatives. *See* Underlying Discovery Motion (Ex. 4), at p. 12-16 (showing how formularies of certain PBMs and third-party payors treat Asacol products as interchangeable with other treatments). Allergan has also obtained information regarding how industry experts treat the relevant market, including information from the FDA, the National Institute for Health, and other industry groups and publications. *See id.*, at p. 17-18.

The availability of this information from other sources is alone sufficient to deny Allergan's motion. *See*, *e.g.*, *Cantrell v. US Bioservices Corp.*, 2009 WL 1066011, at *2 (W.D. Mo. April 21, 2009) (quashing subpoena directed to non-party because "the documents requested could be first sought from the party defendants. Under the circumstances, the subpoena would impose an undue burden on a non-party"); *ACI Worldwide Corp. v. Mastercard Technologies, LLC*, 2016 WL 3647850, at * 5 (D. Neb. July 1, 2016) (quashing subpoena directed to non-party competitor, because while information "may be tangentially relevant," party did not meet its burden to show that it was "necessary or proportional to the needs of the case," particularly in light of other evidence the party had already discovered).

The court's ruling in *In re eBay Seller Antitrust Litigation*, 2009 WL 5205961 (W.D. Wash. Dec. 23, 2009), is instructive. There, eBay served a subpoena upon its competitor Amazon seeking its confidential market analyses and other proprietary information to show that

Amazon and eBay competed in the same market.  *Id.* at *2. The court noted that "much of the information eBay seeks from Amazon could be obtained from other sources," including public information or "analyses that eBay could conduct itself," and found that "Amazon's competitively sensitive information is likely to be, at best, marginally more valuable than the evidence already in eBay's possession."  *Id.* at *2-3.  The court found that Amazon's internal data was relevant, but quashed the subpoena because eBay had not demonstrated a substantial need for Amazon's highly confidential information:

> EBay's plea for disclosure of Amazon's competitively sensitive information is based not on its inability to mount a defense in the antitrust litigation, but its desire to mount a "Fulsome Defense." . . . In short, mitigating against any claim of "substantial need" is that both parties have demonstrated that they can vigorously pursue their contentions without Amazon's competitively sensitive information.

2009 WL 5205961, at * 3.

The Underlying Court has already held that Allergan does not need additional information from Plaintiffs to show market definition. Allergan cannot make an end run around the Underlying Court's Discovery Order by attempting to obtain the same type of information from Express Scripts.  Allergan has more than sufficient information to establish its defenses, and it has no need to compel Express Scripts to produce more.

**C.**    **The undue burden and substantial harm to Express Scripts by the disclosure of its confidential trade secrets would outweigh any purported relevance or need for this discovery**.

Finally, even if Allergan had shown any relevance and need, which it has not, the Court must then balance these factors against the harm that would befall Express Scripts if its confidential manufacturer agreements and negotiations are revealed to its competitors, the manufacturers with whom Express Scripts contracts, or other entities.

17

Disclosure of the competitively sensitive manufacturer contract negotiations, rebate information, and agreements would deprive Express Scripts of one of its trade secrets and harm Express Scripts in its ability to provide superior economic value to its clients, as set forth in detail above. *See supra,* at p. 7-9, and Jeffrey Decl. (Ex. 3) at ¶¶ 6-21.  This harm to non-party Express Scripts easily outweighs any tangential relevance or need by Allergan. *See Remington Arms*, 952 F.2d at 1032-33 ("discovery should be denied unless party "shows that the potential harm to [subpoenaed party] is outweighed by [party's] need for discovery"); *Am. Broadcasting Co.*, 2013 WL 5276124, at * 7 (quashing subpoena issued to a non-party, where party's "'need' for the requested information to defend the underlying action is slight, while the 'injury' to Syncbak in disclosing its highly confidential commercial information to a competitor may be substantial"); *ACI Worldwide Corp.*, 2016 WL 3647850, at *5.

Allergan asks Express Scripts to turn over documents showing the inner workings of Express Scripts' negotiations with Allergan's competitors. Disclosure of this commercial information would harm Express Scripts commercially in its negotiations with drug manufacturers – including with both Allergan and Allergan's competitors – and could work to Express Scripts' competitive disadvantage, vis a vis both manufacturers and other PBMs. *See* Jeffrey Decl., ¶¶ 18-21. Moreover, if Allergan had access to its competitors' bids and negotiations with Express Scripts, Allergan could use this information to undercut its competitors in negotiations with Express Scripts or other PBMs. *Id.*, ¶¶ 19-20.  Indeed, the fact that the bid documents and rebate agreements are not necessary in this litigation raises the specter that Allergan's demand for its competitor's rebate information is driven by this ulterior motive. *See Echostar Comm'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Col. 1998) (quashing subpoena to non-party competitor for trade secrets in light of party's "possible ulterior

motives" for seeking the information for purposes outside the litigation).

Allergan brushes Express Scripts' confidentiality concerns aside by arguing that Express Scripts' valuable information will be covered by a protective order in the Underlying Lawsuit. Obviously a protective order does not address the concern that the disclosure to Allergan itself would harm Express Scripts.  *See, e.g., In re eBay* 2009 WL 5205961, at *4 (granting motion to quash subpoena seeking non-party's confidential documents despite protective order in place with an "attorney's eyes only" provision, noting that "Outside counsel cannot incorporate such documents into eBay's defense without consulting with eBay insiders.  In doing so, they will necessarily reveal competitively sensitive information directly to eBay").

Allergan ignores the reality that a protective order is insufficient to protect a non-party like Express Scripts, which will have no visibility or control over the use of its information.  For example, the Protective Order in the Underlying Litigation provides that if a party seeks to use at trial evidence that was produced as "Confidential" or "Highly Confidential," the party must "provide notice ***to all other Parties***."  *See* Amended Stipulated Protective Order, attached to Allergan's Memorandum as Ex. E (Doc. 2-5), at ¶ 13 (emphasis added).  Conspicuously absent is any requirement that a party notify Express Scripts before it uses its Confidential documents, thus affording Express Scripts no ability to object or to prevent the public use of its documents.

Numerous courts have agreed and refused to order a non-party to produce its trade secrets, even under a protective order.  *See, e.g., In re eBay* 2009 WL 5205961, at *4 (granting motion to quash subpoena seeking confidential documents, because non-party would have no control over the use or protection of the information); *In re Independent Serv. Organizations Antitrust Litig.*, 162 F.R.D. 355, 357 (D. Kan. 1995) (denying motion to compel production of non-party's confidential trade secrets even when they would be covered by a protective order

because the non-party established that even inadvertent disclosure would be harmful); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530-31 (D. Del. 2002) (one would have to be "divorced from reality to believe" that a non-party's competitor would carefully "maintain[] the confidentiality designation or . . . limit public disclosure during trial."). (citation and internal quotations omitted).

But in any event, a "protective order which limits to whom information may be disclosed does not eliminate the requirement of relevance and need." *Mannington Mills,* 206 F.R.D. at 531 (citation omitted); *see also Echostar*, 180 F.R.D. at 396 ("[t]he protective order does not negate the fact that the information which is sought by Echostar is only marginally relevant, and does not negate the fact that Echostar has not established that denial of the discovery will cause Echostar to suffer undue hardship.").

Finally, in addition to the aforementioned concerns of confidentiality and protection of Express Scripts' trade secrets, Allergan's request that Express Scripts disclose all documents pertaining to Express Scripts' "consideration of and decisions on" manufacturer bids is too vague, ambiguous, and overbroad for Express Scripts to reasonably respond to, and would impose an undue burden on Express Scripts.[5]  Express Scripts has no way to reasonably identify and collect all of the documents and information that went into the "consideration"  and "decisions" on its contract negotiations with manufacturers which, as framed by Allergan, would

---

[5] In its Motion, Allergan asserts that the "bid documents" and "rebate agreements" are requested by document Request Nos. 2, 3, 4, 10, 11 and 13. Express Scripts disputes that those Requests call for documents pertaining to negotiations or agreements with other manufacturers, as those Requests specifically request documents pertaining to the Asacol products, and Allergan did not request these documents until the eve of filing this motion. *See* Baumann Decl., at ¶ 9. Moreover, those Requests are extremely overbroad and ambiguous as to the documents requested, and Express Scripts has objected to the breadth of these Requests.  Nevertheless, as the parties have conferred regarding these objections and Allergan has limited its Motion to the bid documents and rebate agreements, these are the only documents remaining at issue.

include negotiations with manufacturers with whom Express Scripts did not ultimately enter into agreements.  *See* Baumann Decl., at ¶¶ 14-15.

In order to respond to Allergan's latest demand that Express Scripts produce these additional documents, Express Scripts would have to undertake costly and time-consuming efforts to first identify all Express Scripts employees who were involved in each step of the process, and then search the files of each person, as well as having an IT forensic data team search for e-mails or other electronic data reflecting internal communications or assessments, from January 1, 2009 to the present.  *See* Baumann Decl., at ¶ 17. This would require multiple Express Scripts employees to spend several weeks (if not longer) to identify, collect and review potentially thousands of documents, which would further disrupt Express Scripts' business and hamper its employees' abilities to perform their daily jobs.  *Id.*, ¶¶ 18-19.

Express Scripts has already expended considerable time and resources to provide responsive documents in this matter, in good faith and consistent with the compromise reached between counsel to comply with the subpoena.  *Id.*, ¶ 20.  Express Scripts should not be put to any further burden.  *See Arista Records, LLC v. Lime Group, LLC*, 2011 WL 781198, at *3 (S.D.N.Y. Mar. 4, 2011) (denying Rule 45 inquiry into internal communications of a non-party because "the burden of collecting, searching, reviewing, and producing all internal communications . . . would significantly outweigh any potential probative value, particularly here, where the burden would be imposed on non-parties.").

Balancing Express Scripts' burden and hardship in producing its confidential documents against the information's minimal relevance and Allergan's lack of need, it is clear that Allergan's motion to compel should be denied.

**III.** **Allergan has Not Shown Any Need to Depose an Express Scripts' Representative.**

Allergan also seeks to depose Express Scripts' corporate representative on the topics of Express Scripts' bid documents and rebate agreements.  The Court should deny Allergan's motion to compel Express Scripts to produce a corporate representative on these topics, for all of the reasons discussed herein.

Additionally, Allergan asserts that it needs to depose a corporate representative to "authenticate" the documents that Express Scripts has already produced.  A deposition to authenticate that production is unnecessary. Pursuant to the Federal Rules of Evidence, documents are self-authenticating when the producing party certifies them as business records under Rule 803(6).  *See* Fed. R. Ev. 902(11).  Express Scripts has provided herewith a declaration certifying all of the documents it produced as business records of Express Scripts, pursuant to Rule 803(6).  *See* Baumann Aff., ¶ 21, and Exhibit A thereto.  No further authentication is needed.

As such, Allergan has no need to burden Express Scripts' employees with a deposition to authenticate its documents, and Allergan's motion to compel a deposition should be denied.

**IV.** **The Court Should Require Allergan to Pay Express Scripts' Reasonable Attorneys' Fees and Costs in Responding to the Subpoena.**

This Court should require Allergan and their counsel to pay all reasonable attorneys' fees and costs that have been incurred, or may be incurred, by Express Scripts in responding to the subpoenas, including the fees incurred in preparing this opposition.  Under Rule 45, Allergan and its counsel had a duty to "take reasonable steps to avoid imposing undue burden or expense" when issuing a subpoena to a non-party such as Express Scripts.  Fed. R. Civ. P. 45(d)(1).  Moreover, Rule 45 expressly provides that the Court "must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a

party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). According to the 1991 Advisory Committee Notes, Rule 45's sanctions provision was intended primarily to protect a "non-party witness as a result of a misuse of the subpoena." Fed. R. Civ. P. 45(c)(1) Advisory Committee's Note (1991). Nevertheless, sanctions may be imposed even if a party "believed that the information being sought was relevant to its defense of the underlying action," because even "'good faith' will not avoid sanctions if the party failed to take reasonable steps to avoid an undue burden." *American Broadcasting Cos. v. Aereo, Inc.*, 2013 WL 6086867 (N.D. Iowa Nov. 19, 2013) at * 4 (citing cases).

Sanctions are fully warranted in this case because Allergan has taken no steps to avoid imposing an undue burden or expense on Express Scripts. *American Broadcasting* is directly on point. In that case, defendant Aereo sought information concerning plaintiff CBS's investment in non-party Syncbak. Aereo served a request for document production on plaintiff CBS and, two days later, "rather than waiting for CBS's response, Aereo served Syncbak with subpoenas seeking essentially the same information." 2013 WL 6086867, at *4. The court held that sanctions were warranted because Aereo violated its duty under Rule 45 to "take reasonable steps to avoid imposing an undue burden or expense" on a non-party. *Id.* at *5. Aereo subpoenaed the documents from a non-party without first attempting to compel plaintiff to produce the same documents, because "based on [the underlying court]'s prior comments and ruling, Aereo had reason to suspect that discovery . . . would not be compelled. Rather, Aereo served Syncbak – a non-party – with subpoenas seeking essentially the same information, thereby forcing Syncbak to incur unnecessary expenses." *Id.*

That court's reasoning is directly applicable here. While the Underlying Court told Allergan that it would reconsider Allergan's motion to compel Plaintiffs to produce documents if

Allergan submitted expert testimony showing a need for these documents, Allergan chose to try

its hand in this Court instead.  *See* Discovery Order (Ex. 1) at fn. 2 (stating "defendants should

be permitted to renew this request in the event that their expert(s) opine that the requested

information is necessary to formulate their opinions, at which time the merits of the renewed

motion should be considered anew"), and order affirming denial of motion without prejudice to

renew [Doc. 292].  And Allergan filed a motion to expedite this Motion when it became clear

that the Underlying Court would likely deny its motion to compel the same documents from

Shire.

  It is clear that Allergan took no reasonable steps to avoid imposing an undue burden or

expense on Express Scripts, and Express Scripts is entitled to its attorneys' fees incurred in

defending against the subpoenas. S*ee Chevron Corp. v. Salazar*, 2011 WL 7112979, at *3-4 (D.

Or. Nov. 30, 2011) (granting motion for attorney's fees under Rule 45 on the grounds that

subpoena was unduly burdensome); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 680

(N.D. Okla. 2008) (holding that non-party was entitled to be reimbursed for attorneys' fees it

incurred in defending against unduly burdensome subpoena); *see also The Hunte Corp. v.

Martinelli*, 2010 WL 4813849, at *2 (W.D. Mo. Nov. 19, 2010), *aff'd* 2011 WL 6822123 (8th

Cir. Dec. 29, 2011) (awarding attorney's fees even when non-party was ordered to comply with

subpoena, finding it "appropriate to shift all reasonable and necessary costs [non-party] incurs in

complying with the subpoena" to party that issued subpoena).

## <u>CONCLUSION</u>

For all of these reasons, Express Scripts respectfully requests that this Court enter an order denying Allergan's motion to compel, awarding Express Scripts its attorneys' fees and costs incurred in preparing this opposition and in responding to the subpoenas, and granting such other relief as the Court deems just and proper under the circumstances.


Respectfully submitted,

HUSCH BLACKWELL LLP


By:     */S/* Christopher Smith
        Christopher A. Smith, #53266MO
        190 Carondelet Plaza, Suite 600
        St. Louis, MO  63105
        (314) 480-1500
        (314) 480-1505 (facsimile)

***Attorneys for Express Scripts***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served by operation of

the Court's electronic filing system upon Counsel of Record, this 10th day of May, 2017.


                              */S/* Christopher Smith