# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE ASACOL ANTITRUST LITIGATION  )
                                   )     Civil Action No. 15-12730-DJC
(All Actions)                      )
                                   )

# ORDER ON DEFENDANTS' MOTION TO
# COMPEL PRODUCT MARKET DISCOVERY

January 3, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on Defendants' Motion to Compel Product Market Discovery. (Docket No. 194). By this motion, the defendants are seeking an order compelling plaintiffs to produce product market discovery concerning nine ulcerative colitis treatments.[1] The defendants contend that these nine treatments "are interchangeable with the Asacol Products," and that the requested documents are necessary to establish the relevant product market. Defs. Mem. (Docket No. 195) at 1-3. According to the defendants, this information will establish that the Asacol Products did not have a dominant share of the properly defined market and that the Asacol Products have cross-elasticity of demand with other products. Id.

---

[1] The categories of documents requested from the EPPs have been characterized by the defendants as follows: Promotion and Marketing; Oral Dosage Ulcerative Colitis Treatments; Contracts; Purchases and Reimbursements of Oral Dosage Ulcerative Colitis Treatments; Substitution and Competition; EPP Individual Plaintiff; Citizen Petitions; and Communications with Other Plaintiffs and Pharmaceutical Manufacturers. The categories of documents requested from the DPPs have been described by the defendants as follows: Promotion and Marketing; Oral Dosage Ulcerative Colitis Treatments; Contracts; Purchases and Sales of Oral Dosage Ulcerative Colitis Treatments; Pharmaceutical Formulations; Substitution and Competition; Communications, Financial Terms, and Generic Versions of Asacol Products; and Putative Class Members. See Defs. Mem. at 8-9.

at 4-7. For their part, the plaintiffs contend that the relevant product market is limited to Asacol and its AB-rated generic equivalents. Moreover, the plaintiffs argue that even if the relevant product market is broader, as defendants' contend, the requested information would not provide the information necessary to establish either the relevant market or Asacol's market share. The plaintiffs have submitted the affidavit of an expert, Professor Meredith Rosenthal, Ph.D., in support of their position. The plaintiffs have also submitted affidavits establishing the burden that would be imposed on them if they were ordered to produce the documents. See generally DPP Mem. (Docket No. 218) at 1-3; EPP Mem. (Docket No. 216) at 1-3. The defendants have not provided any comparable evidence.

This court finds that the complex issue of the relevant product market is not appropriately decided in the context of the instant motion to compel. Even assuming, however, that the defendants will be permitted at trial to offer proof of allegedly interchangeable drugs, and Asacol's market share of such a broader market, this court concludes that the evidence the defendants need to prove their position is unlikely to be obtained from information that is in the plaintiffs' possession. Therefore, the motion to compel documents relating to the nine other ulcerative colitis treatments is denied without prejudice.[2]

In addition, however, the plaintiffs have categorically asserted that they do not, as a matter of policy, recommend substitutes for prescribed products. The defendants challenge the veracity of this assertion. Therefore, this court orders that the plaintiffs are to produce any policies, from the period January 1, 2009 to the present, concerning whether the plaintiffs

---

[2] In this court's view, the defendants should be permitted to renew this request in the event that their expert(s) opine that the requested information is necessary to formulate their opinions, at which time the merits of the renewed motion should be considered anew.

[2]

and/or pharmacy employees are permitted to recommend that other products be substituted for Asacol Products. The parties are to meet and confer about the appropriate scope of such discovery. The motion to compel is otherwise denied.

## II. DISCUSSION

### Relevance of the Information to Establish Market Power

The parties disagree as to whether the requested information is necessary to establish or rebut "market power." The plaintiffs contend that they have direct evidence of market power and/or that market power is presumed in a case such as the instant one, where the defendants are alleged to have orchestrated a product hop in order to avoid a patent cliff. DPP Mem. at 6-7. Therefore, they argue, there is no need to demonstrate market power through the indirect method of describing the relevant market. Id. at 7. See Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co., 838 F.3d 421, 434-41 (3d Cir. 2016) ("Doryx") (discussing direct and indirect proof of monopoly power). Moreover, the plaintiffs contend, economic inter-changeability, and not therapeutic interchangeability, is the relevant inquiry, so that the documents regarding the therapeutic substitutability of Asacol drugs and other drugs are irrelevant. DPP Mem. at 7-9. For these and the other reasons detailed in their memoranda, the plaintiffs have taken the position that discovery should be limited to the Asacol Products and their generic equivalents. See In re Aggrenox Antitrust Litig., No. 3:14-md-2516 (SRU), 2016 WL 4203387, at *1 (D. Conn. Aug. 8, 2016) (court finds "that the only relevant market in this litigation is . . . the market of Aggrenox and its generic equivalents, and that no discovery or evidence relating to other drugs as potential substitutes is relevant.").

[3]

For their part, the defendants argue that "market power and the product market definition is a critical and potentially dispositive issue in this case," as a consequence of which "it is imperative that Defendants obtain discovery on ulcerative colitis treatments other than the Asacol Products in order to mount a full and fair defense." Defs. Reply Mem. (Docket No. 233) at 3. The defendants reject the argument that the plaintiffs' use of direct evidence would be sufficient in this case, but assert that even if it is, the defendants should be permitted to craft their defenses as they see fit. See id. at 6-8. In response, plaintiffs argue that the cases on which the defendants rely differ from the instant case.[3] See, e.g., EPP Mem. at 6-8, 11-13.

As noted above, this court has not been tasked with defining the scope of the appropriate product market, or what evidence the plaintiffs will need to introduce on the issue of market power, in connection with the motion to compel. Therefore, this court will assume that the documents requested are relevant to the issues in the litigation (at least at this stage), and may be probative in connection with determining the defendants' market power. Nevertheless, this court finds that the plaintiffs have persuasively established that the materials defendants are seeking are cumulative of information more easily available from other sources, will not assist the defendants in proving market share "in any meaningful way" and would not "provide much other than anecdotal evidence." Rochester Drug Coop. v. Braintree Labs., Inc.,

---

[3] For example, the defendants rely primarily on the recent Third Circuit decision in Doryx. As the Third Circuit noted, Doryx did not involve a situation where the defendants had acted "to avoid a 'patent cliff' – the end of patent exclusivity, corresponding to the brand drug's loss of market share – by stringing together new periods of patent exclusivity in order to completely bar generics from entering the market." Doryx, 838 F.3d at 439-40. Moreover, in Doryx the plaintiffs had failed to make even "a serious effort to present direct evidence of Defendants' monopoly power." Id. at 434. The plaintiffs in the instant case argue that this case does involve a patent cliff, and that they have significant direct evidence of monopoly power. Thus, plaintiffs contend that Doryx is inapplicable here.

[4]

No. C.A. 07-142-SLR, 2011 WL 13098292, at *2 (D. Del. June 15, 2011). Moreover, the plaintiffs have established that it would be unduly burdensome for them to comply with the requests as crafted.

### Potential Use of the Requested Information[4]

As discussed more fully below, the plaintiffs have provided detailed information in support of their contention that the information the defendants have requested will not enable the defendants to establish the relevant product market or market share. In response, the defendants have elected to argue simply that they are not obligated "to prove their case" or to engage an expert in connection with discovery. Defs. Reply Mem. at 8-9. This court does not intend by this order to require the defendants to produce expert testimony at this stage. I do find, however, that the plaintiffs' arguments concerning the insufficiency of the requested information for purposes of establishing the relevant market and the defendants' power within that market to be persuasive and unrefuted. I also find that the plaintiffs have established that the production would be unduly burdensome.

The plaintiffs have provided the Declaration of Meredith Rosenthal, Professor of Health Economics and Policy at the Harvard School of Public Health, and an Academic Affiliate of Greylock McKinnon Associates, a consulting and litigation support firm. Rosenthal Decl.

---

[4] The defendants have elected to focus their arguments on whether or not, as a general statement, documents relating to the nine ulcerative colitis products should be produced. While they complain, in a general way, that the search terms the plaintiffs have agreed to run are too limited even if discovery is limited to Asacol Products, that argument has not been fully developed in their pleadings. The plaintiffs argue that the terms they have agreed to run are not only sufficient to provide the documents relating to the Asacol Products, but will also pick up information related to the nine other treatments, which will be produced as well. Since the sufficiency of the search terms has not been addressed in detail by any party in connection with the motions before this court, that issue will not be addressed herein.

[5]

(Docket 215-5) at ¶ 1. Prof. Rosenthal has opined that the materials requested by the defendants are not "relevant or useful for any expert to apply standard and scientifically accepted methods of market definition." Id. at Executive Summary. As she has attested in part:

> . . . Market-wide data are necessary because the behavior of individual market participants cannot be used to measure the extent to which substitution puts downward pressure on a firm's pricing strategy. It is only by estimating aggregate patterns of substitution in the face of relative price changes that an economist can accurately describe the price responsiveness of a product in relation to others and therefore market power and market definition.
>
> Defendants' motion to compel focuses upon data for individual entities, *not the market as a whole*. These plaintiffs do not constitute the entirety of the purchasers and sales in the antitrust market that must be defined here; they represent only a portion of the purchasers and sales. Focusing upon them alone for purposes of defining the antitrust market relevant here is insufficient, incomplete, and potentially misleading. As discussed below, the determination of the correct antitrust market must be conducted using market-wide data, such as IMS data or transactional data maintained by the defendants themselves. Such market-wide data contain the sales for each of the plaintiffs. In addition, the discovery materials from defendants will measure and quantify the amount and timing of the rebate strategies implemented for the market as a whole. Using these materials from defendants, an economist can assess the impact of these price-offset strategies upon market-wide sales quantities and prices in the context of the [Horizontal Merger] *Guidelines* [developed by the DOJ and the FTC, and used to determine relevant antitrust markets] as discussed below. Obtaining similar materials from a few market participants would be insufficient.

Id. at ¶¶ 9-10; see ¶¶ 12, 14. Moreover, as Prof. Rosenthal has attested, and as is apparently undisputed, there is a wealth of aggregate data which is available to all parties, which could be used "to address market definition (as well as impact and damages)." Id. at ¶ 19. Finally, Prof. Rosenthal concluded that "the data requested by defendants are neither useful nor sufficient for establishing market definition on a Class-wide basis in this case." Id. at ¶ 22. I find Prof.

[6]

Rosenthal's assessment that the requested information would be insufficient to support the defendants' claim of lack of market dominance to be persuasive.

The plaintiffs have also submitted affidavits relating to the burden that would be imposed if they were ordered to produce documents relating to the nine other drugs.  See Declarations of Michelle Merritt, Laura James, Barbara Rauscher, Edward Kirker, Matthew Paulson, David P. Germaine, and Gregory A. Drew.  (Docket No. 215 at Exs. 6-8, 10-13).  Defendants contend that the plaintiffs have overstated this burden.  In light of the limited relevance of the requested information, as detailed above, this court concludes that it would be unduly burdensome for the plaintiffs to comply with the defendants' discovery requests.

**Potential Admissions**

The defendants argue finally that documents from the plaintiffs' files can be used as admissions that the nine ulcerative colitis treatments are the therapeutic equivalents of the Asacol Products.  See Defs. Reply Mem. at 15.  During oral argument, the plaintiffs argued that they had policies that prohibited pharmacists from recommending the substitution of one drug for another.  The matter was not fully developed in court, and the plaintiffs agreed to review that matter further.  As this court stated during the motion hearing, the plaintiffs are to produce any policies, from the period January 1, 2009 to the present, concerning whether the plaintiffs and/or pharmacy employees are permitted to recommend that other products be substituted for Asacol Products.  The parties are to meet and confer about the appropriate scope of such discovery.

### III.  ORDER

For the reasons detailed herein, the Defendants' Motion to Compel Product Market Discovery (Docket No. 194) is DENIED without prejudice, except that this court orders that the plaintiffs are to produce all policies, from January 1, 2009 to the present, concerning whether the plaintiffs and/or pharmacy employees are permitted to recommend that other products be substituted for Asacol Products.  The parties are to meet and confer about the appropriate scope of such discovery.

                                         / s / Judith Gail Dein                          
                                         Judith Gail Dein
                                         United States Magistrate Judge